IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LYNN I. WILDER,

        Plaintiff,

vs.                                    Civ. No. 05-857 MV/ACT

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision filed January 24, 2006. Docket No. 12. The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion is well taken.

## I. PROCEDURAL RECORD

1.      Plaintiff, Lynn I. Wilder, applied for Supplemental Security Income Benefits on February 14, 2002. Plaintiff alleged she became disabled on April 4, 2001, due to back and leg pain, depression, back spasms, a bipolar disorder, and problems sitting and standing for long periods of time. Tr. 16, 53-55. The application was denied at the initial and reconsideration level. The ALJ conducted a hearing on December 16, 2003. Tr. 309. At the hearing, Plaintiff was represented by

_____

[1]An order of reference was filed on May 30, 2006.  Docket No. 20.

counsel.  On May 18, 2004, the ALJ issued his decision and found at step five Plaintiff was not disabled.  Tr. 15-25.  Thereafter, the Plaintiff filed a request for review.  On June 24, 2005, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ.  Tr. 6-8.  The Plaintiff subsequently filed her Complaint for court review of the ALJ's decision on August 10, 2005.

2.      Plaintiff was born on May 25, 1971.  Tr. 53.  Plaintiff attended two years of college and has past work experience as a metal fabricator, telemarketer, dispatcher, pizza maker, and cook's helper.  Tr. 65.

## II.  STANDARD OF REVIEW

3.      The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993)  (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)).  A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision.  *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

4.      In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.   42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (1993).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in

analyzing disability applications.  20 C.F.R. § 404.1520(a-f).  The sequential evaluation process ends

if, at any step, the Commissioner finds the claimant is not disabled.  *Thompson*, 987 F.2d at 1487.

5.      At the first four levels of the sequential evaluation process, the claimant must show:

1)  he is not engaged in substantial gainful employment; 2)  he has an impairment or combination of

impairments severe enough to limit his ability to do basic work activities; 3)  his impairment meets

or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R.

Part 404, Subpt. P, App. 1; or 4) he is unable to perform work he had done in the past.  20 C.F.R.

§§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the

Commissioner to show the claimant is able to perform other substantial gainful activity considering

his residual functional capacity, age, education, and prior work experience. *Id*.

### III. MEDICAL HISTORY

6.       John M. Foster, M.D., an orthopedic surgeon,  treated the Plaintiff from March 22,

2001 to January of 2002 for her lower back pain.  Tr. 148-154.  He noted on March 26, 2001, that

x-rays showed:

> scoliosis with significant abnormality at L-5 and the concave side is to the left.  There is
> spurring on the facet area on the left side of L-5/S-1.  She also has some calcification in the
> anterior ligaments noted all the way up into the thoracic spine and some early degenerative
> changes in the anterior superior bodies of L-3/4/5.  The L-5/S-1 disc is probably pretty
> deteriorated.

Tr. 154.  Dr. Foster ordered an MRI which was performed on November 30, 2001.  The MRI

showed "multiple levels of small disc herniation with the largest disc herniation at the level of L3/4

with left lateral extension."   Tr. 152.

7.       Dr. Foster prescribed muscle relaxants and pain medication to the Plaintiff while under

his care.  Tr. 153-54.  On January 14, 2002, he found that Plaintiff was disabled since November of

2001 due to herniated discs.  Tr. 150, 156.

8.      Plaintiff saw Pawan Jain, M.D., a neurologist, for an evaluation of her seizures on August 13, 2002.  Tr. 209.  Plaintiff reported that she had seizures for four years.  His examination did not show any neurological abnormality.  Tr. 213.  He diagnosed Plaintiff with "[u]nspecified epilepsy (general)" and included in the differential diagnosis "seizure like activity suchs (sic) as partial motor seizures," "panic attacks" and "psuedo seizures."  *Id.*  He recommended that Plaintiff not drive or work near moving machinery and ordered a MRI of Plaintiff's brain.

9.      Plaintiff returned to Dr. Jain on August 26, 2002.  Tr. 201.  The MRI of the brain showed "severe frontal white matter changse(sic) without edema and displacement bilaterally.  This seems to (sic) birth injury to brain or gestation injury." Tr. 201. The EEG did not show any seizure activity.   Dr. Jain prescribed clonazepam and asked that the Plaintiff return in 12 weeks.  Tr. 204.  She returned on February 12, 2003. At that time Dr. Jain diagnosed Plaintiff with a seizure disorder, discontinued the clonazepam and prescribed tegretol.

10.      Plaintiff saw James R. Skee, M.D, board certified in internal medicine, on August 28, 2002.  Tr. 127.  Dr. Skee assessed Plaintiff with chronic back pain, chronic depression and epilepsy. Tr. 227. Plaintiff returned on September 16, 2002 and saw a physician's assistant.  Plaintiff was assessed with chronic low back pain and depression. Tr. 224.  Pain and anti-depressant medications were prescribed.  Dr. Skee a completed  Physical Capacity Evaluation Form on January 27, 2004.  Tr. 247.  He found that Plaintiff had the ability to sit, stand and/or walk for 15 minutes at a time and sit and/or walk two hours during an entire eight-hour workday and stand for one hour during an entire eight-hour workday; could lift up to 10 pounds occasionally and carry up to five pounds occasionally; could use her right hand but not her left hand for simple grasping, pushing and pulling

4

of arm controls and fine manipulation; able to use both of her feet for repetitive movements as in pushing and pulling leg controls; and able to squat occasionally but could not bend, crawl, climb, or reach at all.  *Id.*  He further found that Plaintiff should not work around unprotected heights or moving machinery; had a moderate restriction from driving automotive equipment; and a mild restriction from exposure to marked temperature changes and humidity.  *Id.*

11.     On August 24, 2002, Andrew Maslona, MD, board certified in internal medicine, performed a consultative examination.  Tr. 195-197. He found that Plaintiff had:

1.     Moderate-to-severe lower back pain with normal range of motion.  No neurological deficits.  Slightly slowed gait due to radiating leg pain.  No assistive devise is needed for ambulation.
2.     Depression with normal mental status and affect.

Tr. 197.   He also completed a Medical Source Statement of Ability to do Work-Related Activities. and found she was able to lift ten pounds frequently and twenty pounds occasionally; able to stand and/or walk four hours in an 8-hour workday; and sit for two to four hours. Tr. 198-99.

12.     On September 9, 2002, a non-examining physician, Michael P. Finnegan, M.D. completed a Physical Residual Functional Capacity Assessment.  Tr. 214-221.  He found that Plaintiff was capable of performing light work with occasional balancing and must avoid concentrated exposure to hazards such as machinery and heights.  *Id.*  This report was reviewed in 2003 by David Green, M.D. who affirmed the findings.  Tr. 221.

13.     Plaintiff received counseling from a therapist at the Border Area Mental Health Services, Inc. from January 23, 2002 to March 13, 2002.  Tr. 158-64.  The therapy notes contain only Plaintiff's statements to the therapist.

14.     Harold G. Johnson, Ph.D. performed a psychological evaluation on June 3, 2002.  Tr.

165-67.  He diagnosed Plaintiff with a mixed anxiety-depressive disorder.  He found that her depression had been chronic since 2000.  Tr. 167.  Dr. Johnson completed a Psychiatric-Psychological Source Statement of Ability to do Work-Related Activities and found that she was "moderately limited" in most of the listed work-related activities.  Tr. 169-170.

      15.     Also in the record is a psychological report by Dr. Daniels dated January 20, 2004. Tr. 248-250.  He notes on this report that he treated the Plaintiff on August 28, 2003 and September 18, 2003.  Dr. Daniels administered the Minnesota Multiphasic Personality Inventory-2.  In assessing Plaintiff's mental status, Dr. Daniels wrote:

> Her affect is inappropriate and her mood dysphoric.  Her thought processes are tangential and idiosyncratic.  Although there is no clear evidence of hallucinations or delusions, she reports material suggestive of such.  She denies any homicidal or suicidal ideation.  Her interpersonal skills are extremely poor.  Her judgment is quite impaired and her ability to appropriately relate to others is severely impaired.  It is difficult to assess her intellectual functioning, but her present assessment of her own functioning is clearly somewhat grandiose.  Her interpersonal demeanor, in addition, attends to be hostile, evasive, and detached.

Tr. 250.  Dr. Daniels completed a Psychiatric Review Technique Form ("PRTF") on January 20, 2003.  Tr. 238-46.  He found that she met Listings 12.02 (Organic Mental Disorders); 12.04 (Affective Disorders); and 12.08 (Personality Disorders).

      16.     A non-examining consultant, LeRoy Gabaldon, Ph.D., completed the Psychiatric Review Technique Form ("PRTF").  on June 7, 2002. Tr. 171-84.  He found that Plaintiff suffered from depression and anxiety.  Tr. 174, 176.  He further found that she was mildly limited in daily living activities; was moderately limited in maintaining social functioning and maintaining concentration, persistence or pace; and in the last year Plaintiff had not suffered from an episode of decompensation.  Tr. 181.

      17.     Dr. Gabaldon also completed a mental Residual Functional Capacity Assessment

("mental RFC Assessment").  Tr. 185-88.  He found that Plaintiff's mental activities were either not significantly limited or moderately limited.  He wrote the following:

> On the mental portion alone, her assertion of impairment does not appear to be consistent with available clinical and lay evidence. She does admit to long-term depression.  There is no evidence of thought disorder, cognitive limitation or substance abuse.  ...Ms. Wilder appears to have the capacity to understand/remember. She may have some limitations in her capacity to socialize, to adapt and to attend/concentrate.

Tr. 187.

18.     E. Chiang, M.D., a non-examining physician, reviewed the PRTF and the mental RFC Assessment on March 7, 2003 and affirmed the findings.  Tr. 171, 187.

## IV. DISCUSSION

19.     Plaintiff alleges that the ALJ made numerous errors.  Plaintiff, in her brief, takes a "shot-gun" approach which the Court does not find helpful.  Notwithstanding this approach, the Court will recommend that Plaintiff's Motion be granted based on the following analysis.

Treating physician.

20.     Under the treating physician rule, the Commissioner generally gives more weight to treating physicians' opinions than to non-treating physicians' opinions.  *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).  An ALJ is required to assign the opinion of a treating physician controlling weight if it is both: (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) consistent with other substantial evidence in the record.  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); Soc. Sec. Rul. 96-2p, 1996 WL 374188 (July 2, 1996); 20 C.F.R. § 404.1527(d)(2).

21.     If a treating physician's opinion is not entitled to controlling weight, "treating source

medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. [§§] 404.1727 and 416.927." *Watkins*, 350 F.3d at 1300. The factors are: length of the treatment and the frequency of examination; the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; the degree to which the physician's opinion is supported by relevant evidence; consistency between the opinion and the record as a whole; whether or not the physician is a specialist in the area upon which the opinion is rendered; and other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1301. If an ALJ rejects or discounts a treating physician's opinion, the ALJ must set forth specific, legitimate reasons for doing so. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

22.     In discussing Dr. Foster's opinion that Plaintiff had been disabled since November 1, 2001, because of Plaintiff's herniated discs, the ALJ wrote that he gave "this opinion no significant weight because it is brief, conclusory, and not supported by objective clinical findings (Exhibit 2-F, p.3)." Tr. 19. The ALJ's statement is not supported by substantial evidence. An MRI shows that Plaintiff has herniated discs in her back. Tr. 152. Moreover, the ALJ failed to comply with the legal standard when discounting a treating physician's opinion. His one sentence reason is neither specific nor legitimate.

23.     Plaintiff also argues that the ALJ erred in not giving more weight to the Border Area Mental Health Services' report that indicates Plaintiff has a Global Assessment of Functioning ("GAF")[2] of 45. Tr. 18, 158-60. The ALJ did not err. The GAF score was given by a therapist, not

---

[2]The GAF rates an individual's "psychological, social and occupational functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994). A score of 45 indicates serious symptoms or serious impairment in social, occupation, or school functioning.

a physician.  A therapist is not an acceptable medial source.  20 C.F.R. § 404.1513.  Only evidence

from acceptable medical sources can establish that Plaintiff has a medically determinable impairment.

*Id.*  Moreover, the GAF score is supported only by a record of Plaintiff's statements and not be any

objective medical tests or findings.

24.     The ALJ did not err in discrediting Dr. Skee's opinions stated in the Physical Capacity

Evaluation Form.  Tr. 20, 247.  Dr. Skee is not a treating physician as he only saw the Plaintiff on one

occasion.  On the second visit to his office, Plaintiff was seen by a physician's assistant.  Moreover,

as stated by the ALJ, Dr. Skee's findings were not supported by any objective medical findings, and

the other evidence in the record did not support Dr. Skee's findings.

25.     Finally, Plaintiff asserts that the ALJ erred in not giving Dr. Maslona's opinion more

weight.  Tr. 19-20.   The ALJ found that Dr. Maslona's opinion regarding Plaintiff's functional

limitations was inconsistent with his objective findings.  Tr. 195-97.  Dr. Maslona is a consulting

physician who performed what appears to be a brief evaluation of the Plaintiff.  Without any basis in

his report he opines that Plaintiff has limitations in sitting, standing and walking.  Tr.  198-99.

Finding that Dr. Maslona's opinions were inconsistent, the ALJ did not err in not relying on that

portion of his opinion concerning Plaintiff's functional limitations.

Duty to consider the evidence.

26.     It is well-established in the Tenth Circuit that an ALJ is not required to discuss every

piece of evidence in the record.  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

However, it is required that the record demonstrate that the ALJ considered all of the evidence.  *Id*.

Furthermore, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon as well

*Id.*

9

as significantly probative evidence he rejects.  *Id.* at 1010 (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984).

27.     The ALJ did not mention a letter written by Dr. Daniels which discusses the results of his psychological evaluation.   The letter states that he conducted a "fairly comprehensive psychological evaluation, including a Minnesota Multiphasic Personality Inventory-2, a Million (sic) Clinical Multiaxial Inventory-III, a review of her medical records and a thorough clinical interview."  Tr. 254.  He notes in the letter Plaintiff's idiosyncratic and "almost bizarre behavior."  Tr. 255.  As an example, Dr. Daniels wrote that

> [o]n one occasion, when Ms. Wilder did not have an appointment scheduled she entered this clinician's waiting room, sat down in a chair, and for more than six hours did not say a single word...On another occasion, Ms. Wilder entered the waiting room at 9:20 AM and indicated that she had an appointment at nine o'clock that morning.  This appointment was, in fact, scheduled for two weeks before this.

Tr. 256.  As it is not demonstrated in the record that the ALJ considered this evidence, a remand is necessary.  *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

RFC finding.

28.     The ALJ found that Plaintiff had the RFC for a limited range of light work.  Tr. 24.  After discounting the opinions of Plaintiff's treating physician and examining consultant, the ALJ relied on an Physical Residual Functional Capacity Assessment form signed by two state agency physicians who did not examine Plaintiff.  Tr. 20, 214-21.  This is error.  It has long been held that "[s]uch [checkmark-style] evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence."  *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987).  This RFC assessment contains five lines of explanation.  Tr. 215.  This brief explanation does not qualify as substantial evidence.

29.     When there is no substantial evidence upon which to base an RFC finding, the ALJ should have recontacted Plaintiff's physicians.  *White v. Barnhart,* 287 F.3d 903, 908 (10th Cir. 2001); 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. §§ 404.1512(f), 404.1519a(a)(1).  If the physicians do not have any additional records to make a RFC finding, the ALJ should order a consultative examination.  42 U.S.C. § 423(d)(5)(B); 20 C.F.R. §§ 404.1512(f), 404.1519a(a)(1).

Credibility finding.

30.     Plaintiff asserts that the ALJ erred in analyzing Plaintiff's complaints of pain and that the ALJ's findings concerning Plaintiff's credibility are not supported by substantial evidence.   In evaluating a claimant's complaints of pain, the ALJ must consider three factors:  (1) whether there is objective medical evidence of a pain-producing impairment; (2) whether there is a loose nexus between this objective evidence and the pain; and (3) whether, in light of all the evidence, both objective and subjective, the pain is disabling.  *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987).  The ALJ did not perform this analysis.   On remand, the ALJ should perform a proper pain and credibility analysis.

Step 3.

31.     As this matter will be remanded, the Court will not address Plaintiff's allegation that the ALJ erred at step three.  At step three the ALJ determines whether the medical findings are at least equal in severity and duration as those criteria set forth in a Listing.  *Bernal v. Bowen*, 851 F.2d 297, 300 (10th Cir. 1988).  As the remand requires a comprehensive review of the medical evidence in the record, the remand will require a new analysis at step three.

Request for subpoena.

32.     On December 1, 2003, Plaintiff requested the Defendant to issue subpoenas for Drs.

11

Green, Maslona and Galbadon.  Tr. 113-15.   In § 205(a) of the Social Security Act, § 42 U.S.C. 405(a),  Congress gave the Secretary "full" rule-making power.  The Secretary was directed to "adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the methods of taking and furnishing the same...." *Id*.  Pursuant to this statutory authorization, the Secretary promulgated the regulation codified at 20 C.F.R. § 416.1450(d).  The regulation authorizes the issuance of subpoenas when "reasonably necessary for the full presentation of a case" and requires the party desiring a subpoena to file a written request indicating why a subpoena is necessary and stating the "important facts" that the subpoenaed witness or document is expected to prove.  20 C.F.R. § 416.1450(d)(2).

     33.    As reasons for the subpoena Plaintiff's counsel stated in his letter:

> "...in order to confront the witnesses about what they considered in coming up with their determination and particularly where there has been any additional medical information in the file that would change their opinion. These doctors have never seen the claimant and never did any tests on the claimant."

Tr. 113.  Plaintiff's counsel then discussed the findings of these physicians and other physicians in the record.

     34.    The Court finds that testimony of these witnesses  was not required for a full presentation of Plaintiff's case and that the specific, important facts that the witnesses may have provided could not otherwise be established.  Plaintiff's counsel offered no argument why cross-examination of these witnesses was necessary in this particular case. *Hannah v. Larche*, 363 U.S. 420, 445-60 (1960) (when administrative agencies "are conducting nonadjudicative, fact-finding investigations, rights such as appraisal, confrontation, and cross-examination generally do not obtain.") The reasons offered by Plaintiff's counsel goes to the weight of the evidence, not why cross-

examination was necessary.  At the hearing when the ALJ asked Plaintiff's counsel if he had any objections to the reports, Plaintiff's counsel stated that his objection was to the weight not the admissibility of the reports. Tr. 312.

## RECOMMENDED DISPOSITION

I recommend finding that Plaintiff's Motion to Reverse or remand be granted for proceedings consistent with the above proposed findings.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommended disposton that party may, pursuant to § 646(b)(1)(C), file written objections to such proposed findings and recommended disposition with the Clerk of the United States District Court, 333 Lomas, N.W., Albuquerque, New Mexico 87102.  A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**